First case this morning is case number 4-14-0918, Joseph Sondag and Phyllis Sondag v. Tremco Inc. Appearing for Appellant is Attorney Elward, for Appellee is Attorney Kelley. Good morning. Good morning. Mr. Elward, are you ready to proceed? You may. Good morning. Brad Elward on behalf of Tremco. This is a case that involves a gentleman who worked as a plasterer in the late 1970s and early 1980s, and he claims that he was exposed to a drywall or plaster tape purportedly made by Tremco. I know occasionally in some of the briefs we've referred to it as either drywall or plaster tape, but I'd just like today just to refer to that product as a drywall tape, just for clarity. I think the key questions that we have here on this appeal are first, whether Tremco made this drywall tape that the plaintiff claims he worked with, and if so, whether that product was the proximate cause of his condition. Now, it's our opinion that the jury's verdict is against the manifest way to the evidence, and that the plaintiff's case is so lacking in proof that a judgment notwithstanding the verdict is proper in this case. And I really have two points that I'd like to focus on today. Mr. Kohler, who is the corporate representative for Tremco, he testified about the products that Tremco made. And I think one thing was clear from his testimony is that Tremco did not make a drywall tape. But I think even if we make the assumption that Tremco did make a drywall tape, I think we still must get to a point where the verdict is overturned. And I'd like to explain why we believe that. Even if you assume that Tremco did make this purported drywall tape, there's no evidence that the tape contained asbestos. And I think that's very important, because when we look at the testimony of Joseph Sondag, he says, I don't know whether the product I used contained asbestos. So at that point, it was incumbent upon the plaintiffs to bring in evidence to indicate that the tape that Mr. Sondag used contained asbestos. Now, was that disputed by counsel? I mean, wasn't there, if I'm recalling correctly, someone who said maybe up until a certain period of time, some of the tapes contained asbestos and then some did not? I mean, was that disputed at trial? Not with respect to the drywall tape. And I'll try to clarify that for you, Your Honor. Mr. Kohler testified about the product line that Tremco made. And he said some of the tapes, as they called it, contained asbestos. And those he referred to as the butyl tapes, which were an insulation tape that goes in between the windows. And then he referred to a foam tape and a sponge tape that also were for the same purposes that did not contain asbestos. I'm sorry, was he at some point impeached on that? Well, there was an attempt to do that at one point. And I think that's interesting because the comment that was made... The comment that was made as a part of that actual impeachment effort was simply a question to Mr. Kohler. And he said Tremco tapes contained asbestos to the extent that I'm familiar with those products. Now, that deposition was taken in November of 2016. But when he testified at trial, and that's the testimony that I'm focusing on, he specifically said, and this was not refuted by any additional, any other evidence by Plaintiff's Counsel, that Tremco made three tapes, three categories of tapes as he described it. One was the butyl tape, which contained asbestos, and the other two were the sponge and the foam, which did not. And there was no evidence offered to disprove that statement that he made at trial. Is there evidence that he, though, conceded he was not necessarily familiar with all the tapes that they had made? At one point he did say that. That's true. But I would say this. Again, even if we make the assumption that the jury looked at Mr. Kohler and said, you're not familiar with the entire product line, that gets us to the assumption that I just put forward to the Court. We have a purported Tremco drywall tape. But what says that that tape contained asbestos? Nothing says that that tape contained asbestos. Nothing addresses the issue of fiber release with respect to this purported Tremco drywall tape. So that point is just out there. There's no evidence to support that. You know, there were a variety of things that could have been done with respect to this purported Tremco drywall tape. There could have been product sheets, there could have been expert testimony, there could have been samples of the product brought in, there could have been coworkers, there could have been someone knowledgeable with the consistency of the product. Remember, Thacker and Nolan tell us that you just can't have exposure to the product and say that's enough. You've got to show that it's the defendant's product, that that product contained asbestos, and that there were sufficient fibers released from that product that led to the condition that the plaintiff asserted. And so it's our position that even if you get to the point where you say, okay, maybe we said there's a Tremco drywall tape, what says that that tape contained asbestos, what says that it released fibers, what says that they were at a sufficient level of exposure to meet Thacker and Nolan? Nothing does. And that's our point with respect to this drywall tape. And, you know, I point out that there were, and I know there's some confusion in the record because I use the term documents and pages loosely, I think, but just on a minimum, there were supposedly 14,000 pages of documents that were released from Tremco as a part of the discovery in this litigation. And where in that is any document that refers to a Tremco drywall tape? Where's any document that refers to a Tremco drywall tape containing asbestos? Where's anything in those records referring to a Tremco drywall tape that contains asbestos that releases fibers at a certain level? There isn't. And I know that this Court understands that had there been such a document, that would have been introduced into evidence and it would have been waived in front of the jury. But it wasn't. And I think that's why it's critical that even if we get to that discussion about a purported Tremco drywall tape, there's an utter failure of proof that the tape contained asbestos, utter failure of proof that there was any fiber release. And I think that's why we should prevail on that issue. Now, there's a whole other question, Your Honor. We made the discussion if we assume that there was a Tremco drywall tape. We think that the evidence is clear in this case that there wasn't even a drywall tape made by Tremco. We really don't even need to get to the proximate cause argument. I think the proximate cause argument is a strong argument on our side. But that assumes that there's a Tremco drywall tape. And Kohler testified that they didn't make a drywall tape. He said we didn't make a blue or white tape. He said we didn't make a tape larger than three-quarters of an inch unless it was a custom-ordered tape. Now, we have Mr. Sondag testifying. He thinks his boss bought these tapes at the local hardware store. These were not custom tapes, drywall tapes that Mr. Sondag used. So that gets us into the importance of the testimony of Kohler that we never made a tape larger than three-quarters of an inch unless it was a custom order. Well, counsel, how should we consider the testimony of Mr. Sondag? And then was there some advertisement that was shown that seemed to corroborate what he was describing as far as what the tape looked like? There was an advertisement that was shown to him. I think it was Exhibit 454. And that was advertising for the 440 butyl tape from the late 1960s, I think 1967. And it was shown to him, and it's my recollection, that what he testified to is the name of Tremco on the product. That's what he testified to. And Kohler testified that our products didn't have our company name on the tape. It was only on the packaging of the box. That was in the ad because it was a part of the advertising for the product. But the interesting thing about that ad, and I'm glad you brought that up, because Mr. Sondag testified that the drywall tape that he used didn't have any craft paper backing, any release paper. Well, the tape that Tremco made has backing, craft paper. And I think that's another distinction, and that actually was next on my list to run through, the things that Kohler testified to. The packaging. Tremco did not package its tapes with individual cellophane. They came in boxes. The boxes had the Tremco name on them. But they didn't have the individual cellophane. Mr. Sondag testified that the tape that he used came in individually wrapped cellophane, wrapped tapes, and they had the name on the tape. We don't have anything from Tremco that says that's how their products were made. And I know there was some discussion in the examination of Mr. Kohler about the extent of his knowledge of the product line. But I recall that he was examined with respect to one of the exhibits that had a variety of the products listed. And there were some that he didn't have as intimate familiarity with as others. And I think counsel's point is, well, you don't know the whole product line here. But I think the interesting thing on the rehabilitation that Mr. Larson did is this. Kohler was clear that he knew the process that was utilized by Tremco to make their tapes. And he made an analogy to it. He called it an extruded tape. And he made an analogy to something we're probably all familiar with from our generation, Play-Doh. He said it's like your Play-Doh machine. You put it in there, you squeeze it, and out comes this product. He said that's how we make our tape. And the manufacturing process that he said he was familiar with that Tremco used is not a manufacturing process that would make a drywall tape. And he said that in his testimony at Converting Roman Numerals. I think it was volume 17, page 43. So I think that's something to keep in mind here. Mr. Kohler said Tremco did not make a drywall tape. And Tremco did not make a blue or a white tape. When we look at the tape that Mr. Sondag describes, I think everyone who has any experience with drywall work will understand. He's describing, of course, drywall tape that you put up between two boards. It's a white tape or a blue tape. It's got holes in it. It's got slight tackiness. You put it up. You roll it down. You staple it every once in a while or put some mud on it. And you use that to make your seams or you fill some patches with that. But that's not the tape that Tremco made. So I think from two perspectives in this case, you've got Tremco not making the tape. And then you've got even if Tremco made, even if we assume for discussion Tremco made a drywall tape, they failed to prove that it contained asbestos or it had fiber release or any level of fiber release. And I think that's critical to the arguments that we're trying to make to the Court today. On the assumption of the drywall tape, as I said, there's no evidence it contained asbestos. I don't think there's any evidence at all with respect to the fiber release either. I think that's a critical part according to Thacker and Nolan. You've got to show sufficient level of fiber release and we just don't have that here. The last thing I want to touch on just briefly, and again, we've raised this in our brief and we rely on our brief with respect to the remaining arguments, but is the argument about the impairment. And our position here is that the testimony of Dr. Rossi runs through the objective physical condition of Mr. Sondag. And what's he find? He doesn't find impairment. And he says the condition is not limiting, it's not progressing. Mr. Sondag had a normal pulmonary function test twice, no restriction in his lungs, no respiratory difficulties. He was in good health, did not have restrictive lung function, he had no shortness of breath, no chest pain, no symptoms causing distress. But what was his diagnosis of Mr. Sondag? Well, the diagnosis that Dr. Rossi made was of asbestosis, but he also said it could be called pleural thickening. And I think the position that Mr. Larson took when he argued the case and presented it to Mr. Rossi in his examination was that this is pleural thickening, this really isn't asbestosis. And I know they went back and forth on that. But I think the critical part here is that there was no impairment that this gentleman suffered. I know there was a testimony from his daughter and or his wife about maybe he can't garden as much as he used to. But again, we've got to remember, an 82-year-old gentleman who can go up and down the stairs and not show a shortness of breath, which is what the medical records show, that's pretty good. Because I'm not that old and I know I have shortness of breath. I mean, it's a very good thing for this gentleman. Essentially, is your argument in this regard that a diagnosis of asbestosis without evidence of symptoms is not compensatory? Yes, the mere presence of the pleural thickening unaccompanied by an objectively verifiable and functional impairment. I think that's the key here. The diagnosis of asbestosis includes something more than just pleural thickening, is that right? I think that's debated. Is there any Illinois case that would shed some light on this, one way or the other, whether the diagnosis alone would lead to compensation? I don't recall anything. I don't believe we found anything. And that's one of the reasons we relied on cases from other jurisdictions that had dealt with the issue of the pleural thickening, the asbestos fibers in the lung. And the cases that we cited from Pennsylvania, Maryland, Arizona, all made the comment that the mere presence of these fibers unaccompanied by, as they put it, an objectively verifiable functional impairment are not enough to show compensable harm. And I think the interesting thing is those cases were in part, many times, were grounded on the cases in those states where they addressed a fear of cancer or a fear of AIDS or a fear of contracting something, where they didn't actually have an impairment. They built on those to reach the conclusion that they announced in those cases. And the asbestos products liability case that we cited from Pennsylvania actually comments a little bit, I think it's a 2011 case, it comments a little bit about the status of Illinois law. And in that case it says, well, the Illinois Supreme Court has not addressed this issue yet, but we think if they were to address this, they would find that pleural thickening and pleural plaques are not cognizable injuries in Illinois. And they also reference the cases, I think, as I said, about the fear of cancer and those types of issues. Well, the fear of cancer in FELA cases, that's a compensable injury. The US Supreme Court has said that that is compensable. So FELA does allow that. You can look at potentially there is some guidance there. Here, Dr. Rossi indicated that he did have a concern that Mr. Sondag may develop mesothelioma. But he said he would be speculating. I think that's the key. Because he did say that, and then he was challenged about that, and he said, but that would be speculation or conjecture. I'm not sure of the exact word, but it was the same impact. There is a line of cases, well, there is an Illinois Supreme Court case, Dillon v. Evanston Hospital, that allows for a plaintiff to make recovery if he is able to establish that there is a possibility of future injury, even though it's less than 50 percent. It can be zero to 50 percent if there's testimony from a doctor that establishes that percentage likelihood. Is there such evidence here? Well, first of all, Dillon was actually specifically mentioned and discussed in the asbestos product litigation case from Pennsylvania. That was a discussion that they had in that case, and they rejected that as impacting the point that they reached. Well, Dillon is an Illinois Supreme Court case. So that is the lay of the land here, in terms of recovery for potential future injury. In this case, though, was there evidence, medical evidence of any sort, that would establish the percentage likelihood that he might develop mucophelia? I don't recall anything where a doctor said that. I do recall Dr. Rossi talking about it, and he said, I have this concern. And then when he was challenged about it, he basically said, and again, the word not precise, but he said it would be speculating to say that this would develop into that. I don't think we could say that he offered a definitive opinion that is more likely than not. Certainly, I don't recall anything along the lines of 75 percent or 25 percent. I don't recall any numerical numbers of that nature at all. But again, what we're asking you to do is, in a case where there's no impairment that's been documented in an objective sense by a doctor of a functional impairment, almost every case that we run into, we're going to see a petitioner say, well, I have this, I have that. They're not objective complaints, they're subjective complaints. But what the case, particularly the Hawaii case that we talk about, requires the objective verifiable functional impairment. Well, we just don't have that in this case. You have the family member saying that he had complaints of shortness of breath. Those have been addressed by Dr. Rossi, and Dr. Rossi indicated that there was a causal connection between the asbestosis and the complaints of shortness of breath. Would you be arguing this point? I think that would make it harder for us if the doctor related that. If you have a doctor, if he documented it through a test, I think that would be a different situation than what we have here. Well, if he's just asked in a deposition, family members have indicated that he has complained of shortness of breath. Do you have an opinion based upon a reasonable degree of medical certainty as to whether or not there is a causal connection between the asbestosis and the complaints of shortness of breath? I wouldn't go that far. No, I think it's got to be, because it's not documented by an objectively verifiable test. The impairment is not documented by an objectively verifiable test. In other words, some type of test that would measure the restrictive lung, as they put it, the pulmonary functions of the lungs. I think that has to be the proof. Otherwise, the proof, the standard will always be met by a claimant saying he had shortness of breath or whatever they're complaining about. There has to be an objective element, and that's what the Hawaii case talks about, and that's what we're saying, an objectively verifiable functional impairment. And that would be a doctor performing a test that measures the lung capacity, pulmonary function, something of that nature, and says, I can document this. Not just a complaint, but I can document this and back this up. That's different. And it's not enough to have asbestosis or pleural thickening, which you're saying they're the same thing? Is that what you're saying? Right. There has to be a measurable impairment, an objectively measurable impairment. Your Honors, I'm almost out of time. I just want to conclude. We think this is a case where the verdict does rise to the level of being against a manifest void of the evidence. It's contrary to the evidence to the point where the jury, the verdict was arbitrary. We think it was arbitrary. We think it was not based on the evidence. And we point it out with respect to the mythical, the purported Tremco drywall tape. Even if you make that assumption, which I think is key to what plaintiffs are arguing, there's just no proof that it contained asbestos and no proof that it had fiber. And I think that's critical to our position. Thank you very much. All right. Thank you, Mr. Elwood. Mr. Kelly. Yes. Good morning. My name is Andrew Kelly and I represent the Sondags on this appeal. And I'm here today to request that you affirm the verdict entered by the McLean County jury in this case. I think what you just heard, and if you read the briefs, which I believe you all probably did very extensively, the briefs gave the Tremco spin on the evidence. What you just heard now was the Tremco spin on the evidence. That's the same thing that they argued to the jury and the same thing that they presented at trial. But that's not where we are in this stage of the case. It's not the job of this court, just like it wasn't the job of the trial judge, to look at the evidence from Tremco's standpoint, to look at their spin of the evidence. In fact, at this stage, it's to look at the evidence in the view most favorable to the plaintiff's position, and that's the evidence that you have before you. In addition to that, there was evidence on all of the various points. And one of the things that the Supreme Court opinion and Thacker points out is that on all the various elements of the plaintiff's claim, the plaintiff needs to set forth evidence on that particular element. And there was evidence on each and every element of the plaintiff's claim. And what the jury did, as is the province of the jury in these kinds of cases, is the jury looked at the evidence, looked at the credibility of the witnesses, and essentially what the jury did was they found in favor of plaintiff on each and every one of those elements. They didn't find in favor of the Tremco spin on the evidence. And there's lots of reasons for that. One of the things that Justice Holder-White pointed out was that Mr. Kohler, if you look at the briefs and you look at what the trial testimony was, he was the corporate representative of Tremco. He set forth the Tremco position, but he was impeached on a number of things. In fact, one of the arguments that was just made to you was the allegations in this case was that Mr. Sondag used a drywall plaster tape. That's not the allegation in the case. Mr. Sondag was not a drywaller. He was a plasterer. And that's why we sort of have this sort of disconnect when you listen to what Tremco says about the misidentification or the claimed misidentification of the tape. It's not akin to what the evidence was in the case. One of the things that Mr. Sondag talked about was that as a plasterer, he did not do drywall work. He did not use drywall tape. He used a particularized tape that was for the purpose of plastering. And one of the things that occurred in his career as a plasterer that went back to the 50s was that in the mid part of the 1970s, in order to compete with drywall, they changed the process to a one-step process to make it cheaper essentially, where they would use these boards called blue board and actually use the tape to sort of fill in the gap where there was sort of an indentation on the board so you would have a smooth surface. And that was the way that they competed with this. What they used was Tremco tape. Mr. Sondag never said, I used a drywall tape. He never even necessarily said what he used was a plaster tape. But they used a particularized tape that served the purpose for this. And he said repeatedly, it was a Tremco tape. The argument that was set forth to you in the papers and also was related to the jury and argued to you just now was, well, there's no evidence and the plaintiff put forward no evidence that it was an asbestos tape. There was such testimony. Mr. Kohler, again, his knowledge begins in the 1980s in terms of the various lines of tapes that Tremco had. But as the corporate representative, he had been provided documents. He looked at other documents. And his knowledge as corporate representative when he testified at deposition, and as Justice Holder White pointed out, was impeached at the trial at least twice, was that all of the tapes were asbestos containing. At least up until the late 1970s when a couple of them started to have a substitute. And it wasn't until the 1990s that all of the tapes had asbestos come out of them. What does that mean for this particular case? Well, Mr. Sondag, as I indicated to you, said that he used Tremco on every single job. And it wasn't just him. They had laborers that did work with the tape, other plasterers that did work with the tape. And they would use this tape extensively on each and every single job. And not only did they use it, it was something that they used beginning in the mid-1970s at a time when even under Kohler's testimony, all of the tapes contained asbestos. Even if you look at it in the light most favorable to Tremco, there was a number of years where the only kind of tape that had Tremco's name on it, that Mr. Sondag could have used, contained asbestos. And that was the evidence that was placed before the jury. The other argument that was made to you was, well, there's no fiber release from these tapes. And I think one of the things they point out in their papers is, well, Mr. Sondag himself didn't even say that he saw dust when he was cutting and using the tape, or others were cutting and using the tape. And that really is sort of like a meaningless point in the sense that their own corporate representative, Mr. Kohler, indicated that asbestos, the kind that can be inhaled and respirable and cause disease in individuals, can't be seen with the naked eye anyway. When you have asbestos dust that can cause disease, you can't see it in the air, you can't see it on the surface, that doesn't get them to the end zone in any respect. But there was evidence in the case that there would have been exposure with respect to this. For instance, at volume C1184 at pages 42 to 43, Dr. Frank, plaintiff's medical expert, he's a physician, practices in occupational medicine and disease, has done research on asbestos for decades, he indicated that all products, even those that are encapsulated, which is one of the arguments that Tremco advanced in this case, have the ability to release fibers if they're manipulated in any way. And one of the things that he indicated was with respect to things like tapes or gaskets or brake linings, if you do things that abrade the encapsulated material, it causes fibers to get into the air. The evidence in this case was that Mr. Sondag, he worked in these very small, enclosed, unventilated areas. They didn't open windows in these small homes that they're doing residential plastering work. They didn't have fans going because it changed the way the plaster would dry. And so they would cut this tape, they would cut it repeatedly to fill all the seams, and this is the kind of activity that would release fibers into the air. In addition to that, Tremco, through another corporate representative, a man by the name of Mr. Stark, whose testimony was read to the jury, and at pages 80 and also page 105 of his testimony when he was the corporate representative before Mr. Kohler, he was actually asked about an MSD sheet of Tremco related to a 440 asbestos-containing tape that Tremco made. And one of the things that Tremco itself says in its MSD sheet is that the asbestos-containing tapes have the ability to cause lung damage and cancer. And that's from their very own health hazard data that they supply in their MSD sheet. So in addition to Dr. Frank saying that if you do something to these tapes it has the ability to release fibers, you also have the Stark testimony who was, it's an admission, it was a corporate representative at the time, who's admitted that our product, based on our own MSD sheets, indicate that asbestos fibers, once released, have the ability to cause these diseases, one of which is the lung damage, the disease that Mr. Sondag himself developed. So there was evidence on all those points, that there was fiber release, there was evidence that they were asbestos-containing tapes, and all of those things the jury weighed the evidence, assessed the credibility of Kohler, and they made their determination. And this court, just like the trial court, should not disturb that verdict because there is evidence on each and every element of plaintiff's claim with respect to that. On the medical issues, one of the things that was just mentioned to you is that, I didn't write it down exactly, but I think what it was suggested was that pleural disease, pleural thickening or pleural plaques, is something different and is not a part of the diagnosis of asbestosis. I think that was sort of the theme that I heard there just a moment ago. Asbestosis is actually a disease of the inside of the lung. It's a scarring, it's a chronic condition, it's permanent, it's irreversible, and in most instances in individuals it progresses, meaning that it gets worse over time. As you would expect, because people don't develop it right away, they eventually develop the scarring and it can get worse even without exposure, and over time their symptoms can worsen over time. Most individuals that have asbestosis also have these markings on the outside of their lungs, the pleural plaques or the pleural thickening. It's basically a thickening of the outside of the lung. It can be calcified over time. And most doctors will agree that a pleural plaque or a pleural thickening is a condition. It's not necessarily a disease because the pleural plaques themselves don't usually have any debilitating effect. But when you have the individual that has scarring within their lungs, number one, it's a disease, number two, it progresses, and number three, as Dr. Rossi mentioned, if you have an individual that's had exposure to develop this affliction, they're much more at risk for the development of cancer. Mr. Kelly, did you argue to the jury on this? I did the closing argument on this case. You did the closing. What did you argue to the jury in terms of damages? Sure. I argued a couple things. One is this, which is there's medical bills that came in without objection from Tremco in the amount of approximately $10,000. They relate to monitoring, they relate to testing, pulmonary function testing, chest X-ray, CT scans. And one of the things that Dr. Rossi indicated was that on at least an annual basis he's doing a continued CT scan or chest X-ray, an imaging of the chest of Mr. Sonbegg, to ensure that he is not progressing, as many people do, and also to ensure that he's not developed any kind of cancer. That's one of the things that came in. In addition, one of the other things that I argued to the jury in closing argument was the fact that Tremco admitted that Mr. Sonbegg was injured. One of the things that didn't get discussed in this case, because they've at least partially settled the joint and several verdict that was entered in this case, is there was another defendant in this case, Sprinkman, and Sprinkman and Tremco had counterclaims against each other. And the counterclaim that was filed by Tremco indicated that Sprinkman was negligent and that Mr. Sonbegg was injured and that he suffered damages as a result. That's one of the things that Tremco alleged and argued to the jury was that he was injured. He developed this injury from exposure to asbestos. They essentially agreed with plaintiff on that point. One of the other things that I argued to the jury with respect to the impairment of Mr. Sonbegg is the family. Both his wife and his daughters indicated that he was far less able to do what he had before since he'd been diagnosed with asbestosis, that he had shortness of breath, and that he was less able to do things such as gardening and other things of that nature than he had previously. So is a jury able to award damages for that latter aspect based only on the family's testimony, absent medical evidence connecting the asbestosis to the shortness of breath? Yeah, and I think they are because it's all part of the elements of damages that the jury is asked to consider. One of the things is a loss of a normal life, and that was one of the loss of normal life that he had. The other thing that I think is important with this result... to establish causation. This fellow was a smoker, correct? Or is a smoker? Mr. Sonbegg was a smoker. It was 30 years remote, and he was never a heavy smoker, and I don't think any expert on either side ever concluded that any issues he had going on with his lungs or his health was related to any past smoking. In fact, I think what most of the experts, in fact, on both sides were saying was that Mr. Sonbegg was actually in pretty good health for somebody of his age. He wasn't a smoker. He didn't have a lot of ongoing medical chronic conditions like other people in his age, but he had been a very active person and had continued to try to be so, but what his family had indicated was as much as he would try, as much as he tried to put on a good face, he was less able to do all of those things. Regardless of all those points, one of the things that the jury is tasked with is to determine not only the existence of the injury, but the amount of damages that are awardable for them, and that comes from the case of Espinosa v. Elgin-Juliet Railroad. It's 165 millisecond, 107. That's the province of the jury to determine, and in this case, the jury looked at the evidence, and they could, I mean, Dr. Rossi, he said repeatedly, I diagnosed Joe Sonbegg with asbestosis. I diagnosed him with that injury. The question was the impairment, and if you look at the damages that the jury awarded in this case, this jury, I think, took a good job and a good look at what the evidence was in the case, and they determined that he wasn't somebody that was on oxygen 24-7. He wasn't somebody that was bedridden, and I think that's why they came up with the damages that they did in the case because they examined it based on all of the facts that were before them in terms of what his impairment was with respect to this injury. You're saying that they compensated him for impairment? I think what they compensated him for was his injury as it was related by the physicians, and it wasn't just Dr. Rossi. If you look at Plaintiffs' Exhibit 123A, C, and E, those are three radiographic reports from various radiologists that indicate that within Mr. Sonbegg's lung, he had lung scarring. He had the fibrosis that Dr. Rossi said, that's asbestosis. It's fibrosis or a scarring of the lung related to asbestos, and I think the jury believed the testimony and evaluated the credibility of all of those physicians in determining that, yes, in fact, Mr. Sonbegg had asbestosis. It's a chronic, permanent, incurable condition within his lung that has the ability to progress. This is what I'm trying to parse out, and I'm sorry if you think I'm being too nitpicky here, but it appears Mr. Elwood is saying, put aside just for the moment the family's observations regarding shortness of breath. He's indicating that that wouldn't allow for recovery for impairment because you don't have a doctor saying that it's connected. Asbestosis without impairment, without evidence of impairment, are you saying that is compensable injury? Yes. And is there case law that would support that? Well, I think the way the case law, the short answer is no. I don't think there's an Illinois case that says asbestosis without impairment, if we had such a situation, is not compensable. I think the Sonbegg case is different, though, because I think there was impairment. I mean, one of the things that Dr. Rossi talked about extensively is because of the fibrotic changes, the scarring changes within Mr. Sonbegg's lungs, he has less elasticity of his tissues in his lung. He has less lung volume, but he still falls within the range of what is normal. And that sort of, I think, is the key fact here is Mr. Sonbegg, as I mentioned before, he was somebody that was very active. He was a healthy guy. He smoked very remotely and very little in the past, and nobody was able to say that those things related in any way in shape or form to what his problems were. But Mr. Sonbegg is an individual that he may be in the range of normal, but he still has this condition which has affected, just from a biologic and physiological standpoint, the capacity of his lungs. So he may fall within the range of what's normal for somebody that's 82, but it's not the Joe Sonbegg that it was before. And that's why when we put forth the evidence of what the family had indicated, which is that he was less able to do things than he'd done before, that also is evidence of impairment. So he had the disease, and I think if you look at the cases in Illinois, one of the things they talk about is that if this were a situation where all Mr. Sonbegg had was the pleural thickening, it's a condition, I don't think that's a compensable injury under Illinois law. But he had the scarring within the lung, the actual asbestosis, which is a disease. It's an injury. As I indicated, even Tremco agreed it was an injury. And he had that injury, and that's compensable. And it's up to the jury to determine then is that injury, the one that's been supported by medical opinion, to what degree are damages awardable for that injury? And that's what this jury did. They assessed the evidence in the case. They looked at the facts that were presented to them, and they made their determination. This was a case where the total jury verdict between two claims, one for Joe and one for his wife Phyllis, a loss of consortium, was $245,000. It's not like they gave him millions of dollars for this. But they assessed the evidence because they were presented with all these facts. And I think that's, when you look at everything in this case, this jury carefully considered all of the evidence before it. There was evidence on each and every element. And if you look at the evidence, as is required to do at this stage, in favor of the plaintiff, this verdict must stand. Thank you. All right. Thank you, Mr. Cowley. Mr. Elwood, Revolver. Thank you, Eric. There are just a couple points I'd like to talk about quickly. There's a reference to Mr. Sterk and the MSD, the product sheet that he talked about. That was not for a tape that was a tape to be used for drywall. That was for the 440 tape that was a window sealant. It's a wholly different product. It's like taking a test for a Buick and saying it applies to a Chevy Camaro. It's not the same. They're different products. So to rely on that product sheet as any evidence of any fiber or containing asbestos or fiber release is just wholly inappropriate and wholly wrong. Second, as I said when I started, drywall tape, plaster tape, it doesn't matter. Look at what Mr. Sondag described that he used. Everybody knows what that product is. You can go to the hardware store and buy it, white or blue, fibrous tape. You can see through. It doesn't have backing paper. It doesn't have kraft paper. It's lightly tacky. That's not a product that Tremco made. The products that they did make were described. And again, if you make the leap that, well, there must have been some type of Tremco tape because Sondag said I used a Tremco tape, look at the product that he described as being used. There is no evidence that that fits with the types of products that were manufactured by Tremco based on Mr. Kohler's testimony, based on the testimony about his familiarity with the processes that would go into the making of a tape at the plants. That was unrefuted. So was that a credibility issue that the jury had to resolve who they believed? Well, if it was, what would be the opposing evidence with respect to his opinion, his comment about I'm familiar with the processes that were used at the Tremco plants, and these processes do not produce a drywall tape or a plaster tape or a tape that fits Mr. Sondag's description. There's no evidence that opposes that. And that's why I think this is very critical. When we accept the fact that they're saying that there was some tape, as Sondag described, that he claims is a Tremco tape, where is the evidence that that tape contained asbestos or that there was fiber release from that tape, that fiber release that meets the standards? There was no evidence to satisfy that. I think that's the critical point here. What about the evidence that during the early 70s all of their tapes contained asbestos? Well, again, as we talked about earlier, that was a question that was asked of him. And I think when he answered that question the way he answered that in his deposition, I think he made it clear that based on the information that he had at the time. And I think his trial testimony was unrefuted, that there were three categories of tapes that they made. And they made those in the 70s. And two of them didn't contain asbestos. So if we look at what the trial court said when it was denying our post-trial motion, it made that little comment at the top of the page. It said, well, Mr. Sondag said he worked with a Tremco tape. All Tremco tapes contain asbestos. Therefore, I deny the motion. And he talked a little bit about the medical aspects as well. But you can't make that logical step when there's unrefuted evidence testified to a trial from Kohler that says we made three kinds of tapes and one of them contained asbestos and two of them didn't. And that was not impeached. So I think that's important in this case. We didn't make this product. But even if you make the assumption that we did for the purposes of argument, they fell on causation. And I think for that, for either reason, the verdict should be reversed. Thank you. All right. Thank you. Thank you both. The case will be taken under advisement and a written decision shall issue.